CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
GABRIELA RIVERA (Bar No. 283633)
(E-Mail: gabriela_rivera@fd.org)
RYAN SHELLEY (Bar No. 337528)
(E-Mail: ryan_shelley@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JACOB DANIEL TERRAZAS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JACOB DANIEL TERRAZAS,<br><br>    Defendant. | Case No. 25-cr-00500-PA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FOR VINDICTIVE PROSECUTION; MOTION TO STRIKE GOVERNMENT'S IMPROPER EX PARTE COMMUNICATION WITH THE COURT**<br><br>Hearing Date: November 3, 2025<br>Hearing Time: 3:00pm |

Jacob Daniel Terrazas, by and through his counsel of record, Deputy Federal Public Defenders Gabriela Rivera and Ryan Shelley, hereby files his reply brief in support of the motion to dismiss the indictment for vindictive prosecution (Dkt. No. 73) and moves to strike the government's improper *ex parte* communication with the Court (Dkt. No. 76).

//

//

This brief and motion is based on the attached Memorandum of Points and Authorities, declaration of counsel, exhibits, and all files and records in this case.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 20, 2025      By  /s/ Ryan Shelley
GABRIELA RIVERA
RYAN SHELLEY
Deputy Federal Public Defenders
Attorneys for JACOB DANIEL TERRAZAS

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................2

    A.    Mr. Terrazas established the appearance of vindictiveness, and the burden shifted to the government to rebut the presumption of vindictiveness. ...................................................................................2

        1.    The facts and circumstances surrounding the government's decision to escalate the charge against Mr. Terrazas raises the appearance of vindictiveness. ...........................................2

        2.    The government's decision to escalate the charge against Mr. Terrazas in response to him exercising his right to proceed before a magistrate judge in his misdemeanor trial triggers the presumption of vindictiveness. .....................................10

    B.    The government affirmatively declined to rebut the presumption of vindictiveness and thereby waived its opportunity to present evidence and arguments in rebuttal. ...........................................................11

    C.    The Court should strike the government's improper *ex parte* communication lodged at Docket Number 76. ..........................13

    D.    If the Court does not grant the instant motion on the papers, Mr. Terrazas is entitled to discovery. ...............................................14

III. CONCLUSION..................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hartranft v. Encore Cap. Grp., Inc.*,
3:18-cv-011870-BEN-RBB, 2021 WL 2473951 (S.D. Cal. June 16, 2021) .............. 7, 12

*Monarrez v. Centerra Grp., LLC*,
2:21-cv-03596-JWH-PLA, 2023 WL 12020604 (C.D. Cal. August 22, 2023) ......... 7, 12

*United States v. Barron*,
172 F.3d 1153 (9th Cir. 1999) (en banc) ................................................................. 12

*United States v. Escalante*,
637 F.2d 1197 (9th Cir.1980) ................................................................................. 13

*United States v. Gallegos-Curiel*,
681 F.2d 1164 (9th Cir. 1982) ........................................................................ passim

*United States v. Gourley*,
CR-06-6011-RHW, 2006 WL 2585027 (E.D. Wash. Sept. 7, 2006) ........................ 13

*United States v. Grandberry*,
730 F.3d 968 (9th Cir. 2013) .................................................................................. 12

*United States v. Nunez*,
223 F.3d 956 (9th Cir. 2000) .................................................................................. 12

*United States v. Smith*,
506 F. App'x 600 (9th Cir. 2013) ............................................................................ 12

*Hanson v. Saul*,
No. 2:19-cv-08425-MAA, 2021 WL 11795758 (C.D. Cal. Mar. 9, 2021) ................ 14

**Rules**

Local Rule 83-2.5 ...................................................................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"Sitting en banc, [the Ninth Circuit] held that a superseding indictment supports a presumption of vindictiveness when the additional charges are based on the same conduct that was the subject of the first indictment, when the same sovereign was involved, and, most importantly, when the decision to file increased charges directly followed the assertion of a procedural right." *United States v. Garza-Juarez*, 992 F.2d 896, 907 (9th Cir. 1993) (citing *Adamson v. Ricketts*, 865 F.2d 1011, 1018 (9th Cir. 1988) (en banc)). The government concedes that its felony indictment against Mr. Terrazas is based on the same conduct as the complaint it filed two months earlier, *see* Dkt. No. 75 (Gov't Opp.) at 9, 18; that it is the same sovereign that made both charging decisions, *id.* at 10, 18; and that it increased the charges against Mr. Terrazas just one week after he asserted his right to have his misdemeanor case tried before a magistrate judge, *id.* at 10.

Despite clear circuit precedent holding that such circumstances give rise to a presumption of vindictiveness, the government affirmatively declined its opportunity to rebut that presumption in its opposition. *Id.* at 7 n.1. The government did not explain prosecutors' sudden decision to escalate the charge against Mr. Terrazas or the timeline of that decision. Nor did it address other facts raised in Mr. Terrazas's motion further supporting the appearance of vindictiveness, including that the prosecutors' choice to escalate Mr. Terrazas's charge to a felony nullified his right to proceed before a magistrate judge. Instead, the government's opposition mischaracterizes Mr. Terrazas's arguments and misunderstands governing law to argue that no presumption of vindictiveness applies in this case. In so responding, the government has waived its opportunity to present facts and argument to rebut the presumption of vindictiveness.

With the presumption of vindictiveness established in Mr. Terrazas's opening brief unrebutted and the government's waiver of its opportunity to present evidence and argument in rebuttal, this Court should dismiss the indictment with prejudice.

Additionally, the Court should strike the government's declaration filed *in camera* at docket entry 76. By the government's own admission, "[n]one of the arguments in [its] brief rely on that declaration." Gov't Opp. at 7 n.1. The declaration is therefore not properly submitted in support of the government's brief and constitutes an impermissible *ex parte* communication with the Court. Finally, if the Court decides not to dismiss the indictment on the papers, Mr. Terrazas is entitled to discovery, which must include the opportunity to examine and respond to the government's *in camera* declaration.

## II. ARGUMENT

### A. Mr. Terrazas established the appearance of vindictiveness, and the burden shifted to the government to rebut the presumption of vindictiveness.

Mr. Terrazas's opening brief demonstrated that the facts, circumstances, and timing surrounding the government's decision to escalate his charge from a misdemeanor to a felony raise the appearance of vindictiveness under governing precedent. *See* Dkt. No. 73 (Opening Br.) at 10-14. Rather than proffering evidence or explanation regarding its decision, the government advances two arguments that no appearance of vindictiveness exists. First, it mischaracterizes Mr. Terrazas's brief by asserting that the only fact or circumstance he identified as contributing to the appearance of vindictiveness in this case was the timing of the prosecutors' decision to escalate the charge against him. Gov't Opp. at 15-19. Second, it argues that a defendant's election to proceed before a magistrate judge is not the type of right that can give rise to a presumption of vindictiveness. *Id.* at 19-22. Both arguments fail.

#### 1. The facts and circumstances surrounding the government's decision to escalate the charge against Mr. Terrazas raises the appearance of vindictiveness.

Instead of addressing the facts and circumstances giving rise to the appearance of vindictiveness that Mr. Terrazas identified in his opening brief, the government begins

2

by erecting a straw man: it asserts that the defense "asks the Court to infer vindictiveness solely from the timing of the superseding information relative to when he elected to proceed with a jury trial before a Magistrate Judge." Gov't Opp. at 14. Not so.

While the government's decision to escalate the charge against Mr. Terrazas just one week after he exercised his right to proceed before a magistrate judge powerfully supports a finding of the appearance of vindictiveness, the timing between those two events is not all he alleges in support of that finding. *See Garza-Juarez*, 992 F.2d at 907 (a defendant showing that the government's "decision to file increased charges directly followed the assertion of a procedural right" is the "most important[]" evidence creating the appearance of vindictiveness). The appearance of vindictiveness is further supported by the following facts, all of which were raised and discussed in Mr. Terrazas's opening brief:

1. The felony indictment is "based on the same conduct" that was the subject of the initial complaint, *id.*;
2. All three charging documents and decisions in this case involved "the same sovereign," *id.*;
3. The government's decision to escalate the charge to a felony fully nullified the right Mr. Terrazas had just attempted to exercise: to proceed in front of a magistrate judge;
4. The felony indictment does not allege any new facts or conduct beyond those contained in the initial complaint;
5. The government waited two months between filing the complaint and obtaining the felony indictment;
6. The government does not claim prosecutors discovered any new information about Mr. Terrazas's conduct during the two months between filing the initial complaint and obtaining the felony indictment;

3

7. During the two months between the complaint and the indictment, the government elected to dismiss the complaint and charge Mr. Terrazas with a misdemeanor;

8. The government waited until one week before the then-scheduled trial date before obtaining the felony indictment;

9. Government counsel never raised the possibility that the charge could be elevated to a felony during any conferral between the parties or at the multiple status conferences held before this Court, including at a status conference on July 20, 2025, less than a week before the government obtained the indictment.

Taken together, these facts create the appearance of vindictiveness, which the government was required (but declined) to rebut. *See United States v. Jenkins*, 504 F.3d 694, 700 (9th Cir. 2007) (quoting *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976)) ("The mere appearance of prosecutorial vindictiveness suffices to place the burden on the government").

Ignoring entirely the circumstances identified in Mr. Terrazas' opening brief and reiterated above, the government attempts to defeat the appearance of vindictiveness here with a comparison to *United States v. Gallegos-Curiel*, 681 F.2d 1164 (9th Cir. 1982). Gov't Opp. at 15-17. This faulty analogy crumbles under even the lightest scrutiny.

In *Gallegos-Curiel*, Ninth Circuit held that a presumption of vindictiveness did not attach where the government indicted the defendant for felony illegal entry after he entered a not guilty plea at his initial appearance for a misdemeanor illegal entry charge. 681 F.3d at 1171. The misdemeanor charge had been filed by the Immigration and Naturalization Service ("INS") for later prosecution by the U.S. Attorney's Office. *Id.* at 1166. INS could not file felony complaints without prior approval by the U.S. Attorney. *Id.* After the defendant pleaded not guilty at his initial appearance, prosecutors at the U.S. Attorney's Office reviewed records of the defendant's criminal history that "had not been included in the file before the immigration agent who issued

4

1  the misdemeanor complaint." *Id.* After reviewing a more complete set of information,
2  prosecutors sought and obtained a felony indictment "only a few days later, well before
3  trial." *Id.* at 1169.
4        The facts and circumstances in *Gallegos-Curiel* bear no resemblance to those in
5  the instant case. First, unlike *Gallegos-Curiel*, where the initial lower charging decision
6  was made by an INS official with no independent authority to bring a felony charge,
7  prosecutors at the U.S. Attorney's Office have handled Mr. Terrazas's case from the
8  start and made every charging decision. The prosecutors in *Gallegos-Curiel* had
9  nothing to do with the initial charging decision, and the Court therefore found they
10 "should not be bound by the initial charge filed by the INS upon [defendant's]
11 apprehension." *Id.* Mr. Terrazas case presents no comparable risk that scrutinizing the
12 government's charging decisions will improperly bind prosecutors to the decisions of a
13 separate agency.
14       Second, while the *Gallegos-Curiel* Court found that the short timeframe between
15 the case first being filed and the prosecutors' decision to elevate the charge weighed
16 against the appearance of vindictiveness there, the opposite is true here. The *Gallegos-*
17 *Curiel* defendant made his initial appearance the day after he was apprehended, and
18 prosecutors obtained the felony indictment "only a few days later, well before trial." *Id.*
19 Given this short timeframe, the Ninth Circuit found that the government's "assessment
20 of society's interest in prosecuting [the defendant] certainly could not have
21 crystallized" earlier. *Id.* Here, in contrast, the government waited two months after first
22 charging Mr. Terrazas before obtaining a felony indictment, and it did so just one week
23 before his scheduled trial date. The government offers no explanation for the
24 substantially longer period for crystallization here, nor does it explain why it waited
25 until a week before the trial date to seek the indictment. Instead, it ignores reality to
26 bizarrely claim that the timing of events in *Gallegos-Curiel* is "almost
27 indistinguishable" from the instant case. *See* Gov't Opp. at 16 ("The felony indictment
28 in *Gallegos-Curiel* was obtained only days after the misdemeanor complaint was filed

5

1  and well before trial, *i.e.*, circumstances almost indistinguishable from this case."). It
2  goes without saying that a period of two months is readily distinguishable from a
3  couple days, and the source of the government's confusion on that point is unclear.
4  Regardless, the lengthy period between the commencement of the prosecution and the
5  government obtaining the indictment, as well as the fact that it was obtained just a week
6  before the then-trial date, distinguishes this case from *Gallegos-Curiel* and supports the
7  appearance of vindictiveness.
8      Third, Mr. Terrazas's exercise of his statutory right to proceed before a
9  magistrate judge is not comparable to the entry of a not guilty plea at an initial
10 appearance on a complaint. As the Court in *Gallegos-Curiel* recognized, the entry of a
11 not guilty plea at an initial appearance is "routinely made and . . . expected as part of
12 the adversary process," such that it is "more often a matter of form than choice." *Id.* at
13 1170. Because it would have been highly unusual for a defendant to do anything other
14 than plead not guilty at the initial appearance, the Court found that doing so did not
15 "pose a danger of retaliation or present a realistic likelihood of vindictiveness." *Id.*
16 Unlike the entry of a not guilty plea, Mr. Terrazas' choice to proceed in a magistrate
17 court before a magistrate judge was not routine or a matter of form. His decision was an
18 affirmative choice that changed the forum of the case, signaled to the government that
19 he intended to go to trial, and indicated that he preferred that the trial proceed in
20 magistrate rather than district court. Importantly, Mr. Terrazas's decision was also one
21 that the government could (and did) nullify by indicting him with a felony. Thus, the
22 statutory right at issue here is far more significant and far more likely to trigger
23 retaliation and vindictive gamesmanship from the prosecution than a routine entry of a
24 not guilty plea.
25     Finally, *Gallegos-Curiel* is also unlike the instant case because the record there
26 established that the government's decision to escalate the charge "was motivated in part
27 by additional information" prosecutors learned about the defendant's criminal history.
28 *Id.* The Court found that the decision constituted "a proper reevaluation of new and

6

existing information concerning a defendant's conduct" which did not warrant a presumption of vindictiveness. *Id* at 1169. Here, the government concedes it did not learn any additional information about Mr. Terrazas's conduct or background between filing the complaint and obtaining the indictment. *See* Gov't Opp. at 9, 17-18. Its opposition notes that, at some point between filing the misdemeanor information on June 18, 2025, and a discovery production on July 14, 2025, it "obtained new surveillance video from Home Depot." *Id.* at 9. But according to the government, this video evidence simply "[c]orroborate[d]" and "confirmed" evidence it already had. *Id.* Importantly, the government does not claim that obtaining the video led or even contributed to its decision to charge Mr. Terrazas with a felony, and has waived any such argument. *See Monarrez v. Centerra Grp., LLC*, 2:21-cv-03596-JWH-PLA, 2023 WL 12020604, at *4 (C.D. Cal. August 22, 2023) ("[D]eem[ing] any opposing argument to be waived" where the non-moving party "d[id] not attempt to rebut that argument in her Opposition") (citing *Hartranft v. Encore Cap. Grp., Inc.*, 3:18-cv-011870-BEN-RBB, 2021 WL 2473951, at *10 (S.D. Cal. June 16, 2021) ("where a non-moving party fails to address an argument raised by the moving part in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party waived").

But even if the government had raised and preserved the argument that obtaining the video evidence led to its decision to charge a felony, such a claim would not withstand scrutiny for at least two reasons. The first problem is timing. The government is conspicuously silent about when it actually received that video evidence, saying only that it "obtained" the video at some point between filing the June 18 information and the July 14 discovery production. *Id.* Assuming, *arguendo*, that the government produced the video evidence to the defense on the same day it received it, which is unlikely, it still waited three weeks before obtaining the felony indictment on August 5. If the government were to claim a connection between the video evidence and the increased charge, it would have to explain how and why its views had not crystallized

by the July 30 hearing, when prosecutors stood by and allowed the case to be reassigned despite the forthcoming felony charge. It cannot do so. The second problem is that the government already believed it had sufficient evidence to prove beyond a reasonable doubt that Mr. Terrazas committed assault by throwing a piece of cinderblock at border patrol agents when it filed the misdemeanor information, before it allegedly obtained the surveillance footage. All three charging documents in this case allege an assault under 18 U.S.C. § 111, and all three are based on the allegation that Mr. Terrazas threw cinderblock at border patrol agents. There is no heightened burden for proving felony rather than misdemeanor assault under Section 111. Instead, the only additional facts the government must prove under its felony indictment are (1) that Mr. Terrazas used a deadly and dangerous weapon, *i.e.*, a piece of cinderblock, and (2) that a bodily injury resulted. *See* Dkt. No. 48 at 1-2, 18 U.S.C. §§ 111(a)(1), (b). But the government already had to prove Mr. Terrazas threw a piece of cinderblock under the misdemeanor information because that was the only assaultive conduct alleged, and the Home Deport footage does not show the alleged victim being injured. Therefore, the government obtaining surveillance footage cannot explain its choice to escalate the charge against Mr. Terrazas because it already believed it could prove the assault with a cinderblock beyond a reasonable doubt when it was charged as a misdemeanor, and the footage does not support the additional allegation of bodily injury.

        In sum, *Gallegos-Curiel* provides no support for the government's position. Rather, it serves to helpfully illustrate the differences between pretrial circumstances where the government's escalation of charges following the defendant's exercise of a right creates the appearance of vindictiveness (the instant case), and where it does not (*Gallegos-Curiel*):

- This case: Appearance of vindictiveness is created by prosecutors escalating a misdemeanor charge to a felony and entirely nullifying Mr. Terrazas's choice to proceed before a magistrate judge just one week after he made that choice, one

8

week before the scheduled trial date, and two months after initially charging the case based on no additional information;

- *Gallegos-Curiel*: No appearance of vindictiveness was created where prosecutors escalated a misdemeanor charging decision made by a separate agency "only a few days" after the defendant's initial appearance and not guilty plea and "well before trial" in response to new "additional information" about the defendant's criminal history, 681 F.3d at 1169-71.

The government's reliance on *United States v. Goodwin*, 457 U.S. 368 (1982), is similarly misplaced. The government does not meaningfully attempt to analogize the facts of *Goodwin* to this case, nor could it, but instead puts forth the blanket proposition that the pretrial context is somehow immune to the presumption regardless of the circumstances presented. Gov't Opp. at 15-17. As described in Mr. Terrazas's opening brief, the en banc Ninth Circuit has expressly stated that *Goodwin* "did not hold that vindictive prosecution can never occur in a pretrial setting" and "post-*Goodwin*, . . . the presumption [of vindictiveness] can arise from pretrial prosecutorial conduct." *Adamson v. Ricketts*, 865 F.2d 1011, 1018 n.8 (9th Cir. 1988) (en banc) (internal citations omitted). Whether the presumption of vindictiveness arises in a pretrial case is a case-specific inquiry which requires the court to carefully review the record, the actions of the government, and the timing of those actions. Instead of engaging with the circumstances of this case and its own actions, the government opposes Mr. Terrazas's motion with platitudes and asks this Curt to ignore its obligation to assess the particular facts in front of it against the applicable case law. This Court should reject that misguided invitation.

### 2. The government's decision to escalate the charge against Mr. Terrazas in response to him exercising his right to proceed before a magistrate judge in his misdemeanor trial triggers the presumption of vindictiveness.

The government next argues that the election to proceed before a magistrate judge is not "the kind of right" that can trigger the presumption of vindictiveness. Gov't Opp. at 19-22. But the vindictive prosecution doctrine does not require the exercise of a particular type of right to apply, nor does it elevate certain types of rights over others. *See United States v. Ruesga-Martinez*, 534 F.2d 1367, 1370 (9th Cir. 1976) (vindictive prosecution doctrine "appl[ies] regardless of whether the accused asserts a constitutional right, a common law right, or a statutory right").

Indeed, as described in Mr. Terrazas's opening brief, the Ninth Circuit's decision *Ruesga-Martinez* provides an analogous and instructive example of the presumption of vindictiveness attaching where the government escalated charges following a defendant exercising the right to choose whether to proceed before a district court or a magistrate court. Opening Br. at 12-15. The government's opposition misunderstands *Ruesga-Martinez*, mistakenly characterizing the relevant right invoked by that defendant as the right to be tried by a jury. Gov't Opp. at 21-22. In that case, it was disputed whether the defendant had any right to be tried before a jury. *Ruesga-Martinez*, 534 F.2d at 1370. But because the defendant indisputably "possessed . . . the statutory right to be tried by a district judge rather than a magistrate," the Court declined to decide whether the defendant "was constitutionally entitled to a jury trial," and instead found a presumption of vindictiveness attached after the defendant "exercise[d] his right to be tried by a district judge." *Id.* at 1370 & n.5.

Despite the government's assertions to the contrary, *Ruesga-Martinez* is routinely cited positively in post-*Goodwin* vindictive prosecution decisions by the Ninth Circuit, *see* Opening Br. at 13. It thus remains good law and defeats the

government's unfounded argument that a defendant's exercise of a right to choose between district and magistrate court cannot trigger the presumption of vindictiveness.

### B. The government affirmatively declined to rebut the presumption of vindictiveness and thereby waived its opportunity to present evidence and arguments in rebuttal.

Where, as here, a defendant makes a prima facie showing of the appearance of vindictiveness, "vindictiveness will be presumed" and "the burden shifts to the prosecution to rebut it by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose." *Adamson*, 865 F.2d at 1017, 1019. The government acknowledges this burden-shifting framework, Gov't Opp. at 12-13, but has affirmatively declined to offer any arguments or evidence to rebut the now-established presumption, *id.* at 7 n.1 (acknowledging that it bears the burden to rebut the presumption upon a finding of the appearance of vindictiveness but declaring it "does not do so at this time").

The government has been aware of this motion since at least August 20, when defense counsel filed a declaration indicating that the defense was contemplating bringing it. Dkt. No. 62 at 4. Government counsel was present at the two separate status conferences with this Court where the motion was discussed, including on September 12, when this Court set a briefing schedule. Dkt. No. 70. That briefing schedule set a hearing for this motion on November 3, and does not authorize the government to submit additional briefing at a later date should the Court find that the circumstances of this case create a presumption of vindictiveness. *Id.* At no time has government counsel requested that this Court bifurcate the adjudication process of this motion to allow it to withhold responsive evidence and argument until after the Court decides whether a prima facie showing has been met. Nor has the government presented any authority suggesting that such bifurcation is appropriate, or that it is entitled to unilaterally impose a bifurcated process without a request to the Court or conferral with the defense.

11

Accordingly, the government's opposition to the motion to dismiss constituted its opportunity to respond to Mr. Terrazas's argument that it "cannot rebut the presumption of vindictiveness" established in his opening brief. Opening Br. at 14. Because the government has affirmatively chosen not to presenting any evidence or argument to rebut the presumption, it has waived its opportunity to do so, and this Court should decline to consider any such argument or evidence presented outside of the ordered briefing schedule. *See Monarrez,* 2023 WL 12020604, at *4 (C.D. Cal. August 22, 2023) ("[D]eem[ing] any opposing argument to be waived" where the non-moving party "d[id] not attempt to rebut that argument in her Opposition") (citing *Hartranft*, 2021 WL 2473951, at *10 (S.D. Cal. June 16, 2021) ("where a non-moving party fails to address an argument raised by the moving part in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party waived"); *United States v. Nunez*, 223 F.3d 956, 958 (9th Cir. 2000) ("[T]he government may waive certain defenses [to a defendant's arguments] by not raising them in a timely manner.") (citing *United States v. Barron*, 172 F.3d 1153, 1156 (9th Cir. 1999) (en banc)).

This Court has clear discretion to not consider evidence and argument raised improperly. *See United States v. Grandberry*, 730 F.3d 968, 980 n.10 (9th Cir. 2013) ("[T]he district court would almost certainly have had the discretion to refuse to entertain an issue first raised [by the government] after the briefing and hearing on the motion to suppress . . .."); *See United States v. Smith,* 506 F. App'x 600, 602 & n.3 (9th Cir. 2013) (noting the district court's discretion to "decline to consider" waived arguments when "there [was] no excuse for the government's delay in raising these arguments" (citation omitted)). And the use of that discretion is particularly appropriate where, as here, the government inexcusably disregards the Court's ordered briefing schedule and attempts to unilaterally authorize itself to submit untimely argument and evidence at a later date. *See United States v. Smith,* 506 F. App'x 600, 602 n.3 (9th Cir. 2013) ("[T]he party who failed to raise arguments in a timely fashion is not a party to

12

whom we feel especially compelled to grant the benefit of the doubt—someone who like a pro se petitioner is bereft of legal guidance and litigation experience. Rather, it is the federal government. As we have stated before: 'As an officer of the court, the prosecutor has a heavy responsibility both to the court and to the defendant to conduct a fair trial.'") (quoting *United States v. Escalante,* 637 F.2d 1197, 1203 (9th Cir.1980)); *United States v. Gourley,* CR-06-6011-RHW, 2006 WL 2585027, at *4 (E.D. Wash. Sept. 7, 2006) (declining to consider untimely argument in opposition to motion to suppress where government "show[ed] a distinct and serious lack of preparation and responsiveness to issues clearly raised"). The government in a criminal case wields considerable power. It therefore "has a vital responsibility to criminal defendants, the courts, and to the public to exercise its powers responsibly and justly." *Gourley*, 2006 WL 2585027, at *4.

Under these circumstances, Mr. Terrazas respectfully requests that this Court hold the government responsible for its choices, and decline to consider any evidence or argument it submits outside of the ordered briefing schedule.

**C.    The Court should strike the government's improper *ex parte* communication lodged at Docket Number 76.**

On the same day the government filed its brief in opposition to this motion, it filed an *in camera* declaration that, according to the government, "identifies th[e] timeline" "from its internal decisionmaking processes and the Grand Jury records in this case." Gov't Opp. at 7 n.1. The government states clearly in its opposition that "[n]one of the arguments in this brief reply rely on that declaration." *Id.*

By the government's own admission, none of the arguments in its opposition rely on the *in camera* declaration. Accordingly, the declaration is not properly filed in support of the government's opposition and constitutes an impermissible *ex parte* communication with this Court. *See* Local Rule 83-2.5 ("Communications with the Judge: Attorneys or parties to any action or proceeding shall refrain from writing letters to the judge, sending e-mail messages to the judge, making telephone calls to chambers,

13

or otherwise communicating with the judge in a pending matter unless opposing counsel is present. All matters must be called to a judge's attention by appropriate application or motion filed in compliance with these Local Rules."); *Hanson v. Saul*, No. 2:19-cv-08425-MAA, 2021 WL 11795758, at *1 (C.D. Cal. Mar. 9, 2021) (striking letter to court as improper filing).

Given the government's clear violation of the Local Rules and the norms for communicating with the Court in the course of litigation, Mr. Terrazas respectfully requests that this Court strike the *in camera* declaration at Docket Number 76.

### D. If the Court does not grant the instant motion on the papers, Mr. Terrazas is entitled to discovery.

Because Mr. Terrazas has established a presumption of vindictiveness that the government has declined to rebut, this Court should grant his motion to dismiss on the papers. However, in the event that the Court does not grant the motion on the written submissions, it should order discovery. Under the governing burden-shifting framework, the government must rebut a presumption of vindictiveness "by presenting evidence of independent reasons or intervening circumstances which demonstrate that the prosecutor's decision was motivated by a legitimate purpose." *Adamson*, 865 F.2d at 1017, 1019. If the government is given the opportunity to do so (which it should not be), Mr. Terrazas must be able to examine and challenge the evidence put forward, including the improperly filed *in camera* declaration. *See Adamson*, 865 F.2d at 1020 (reversing and remanding for an evidentiary hearing where the defendant "made an initial showing to raise a presumption of vindictiveness" and the government's proffered reasons did not definitively rebut it).

## III. CONCLUSION

For the foregoing reasons, Mr. Terrazas respectfully requests that the Court enter an order dismissing the indictment with prejudice and strike the *in camera* declaration at Docket Number 76.

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 20, 2025    By  */s/ Ryan Shelley*
GABRIELA RIVERA
RYAN SHELLEY
Deputy Federal Public Defenders
Attorneys for JACOB DANIEL TERRAZAS