TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
ERIC L. MACKIE (Cal. Bar No. Pending)
Assistant United States Attorney
BRENDA N. GALVÁN (Cal. Bar No. 296456)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3289 / 4850
    Facsimile: (213) 894-0141
    E-mail:   eric.mackie@usdoj.gov
           brenda.galvan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00500-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE No. 1 TO PRECLUDE SELF-DEFENSE ARGUMENTS |
| v. | |
| JACOB DANIEL TERRAZAS, | Hearing Date: January 14, 2025 |
| Defendant. | Hearing Time: 3:00 p.m. Location:   Courtroom of the Hon. Percy Anderson |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Eric L. Mackie and Brenda N. Galván, hereby submits this motion in limine to preclude defendant JACOB DANIEL TERRAZAS from raising a self-defense theory at trial.

//

//

1        This motion is based upon the attached memorandum of points and

2   authorities, the files and records in this case, and such further

3   evidence and argument as the Court may permit.

4        In compliance with the Court's Order Re: Criminal Trial, this

5   joint filing contains (1) the government's motion in limine, (2)

6   defendant's opposition to the motion, and (3) the government's reply

7   in support of its motion.  Also attached to this filing is the

8   required declaration from the government as the moving party.

9   Dated: December 15, 2025          Respectfully submitted,

10                                     TODD BLANCHE
                                       Deputy Attorney General

11                                     BILAL A. ESSAYLI
12                                     First Assistant United States
                                       Attorney

13                                     ALEXANDER B. SCHWAB
14                                     Assistant United States Attorney
                                       Acting Chief, Criminal Division

15

16                                     /s/ Eric L. Mackie
                                       ELIC L. MACKIE
17                                     ERIC L. MACKIE
                                       BRENDA N. GALVÁN
18                                     Assistant United States Attorneys

19                                     Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

20  Dated: December 15, 2025          CUAUHTEMOC ORTEGA
                                       Federal Public Defender

21

22                                     /s/ Gabriela Rivera
                                       GABRIELA RIVERA
23                                     RYAN SHELLEY
                                       Deputy Federal Public Defenders

24                                     Attorneys for Defendant
                                       JACOB DANIEL TERRAZAS

25

26  ///
    ///
27

28

                                2

*Local Civil Rule 5-4.3.4 Attestation: I attest that all other signatories listed concur in the filing's content and have authorized the filing.

/s/ Eric L. Mackie

ERIC L. MACKIE

1    <u>**GOVERNMENT'S MOTION IN LIMINE: MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3         In June 2025, defendant JACOB DANIEL TERRAZAS ("defendant")

4    threw chunks of a smashed-up cinder block at a line of Border Patrol

5    agents who were attempting to protect federal personnel and property

6    in Paramount, California, during a protest that turned violent.  For

7    his conduct, the government charges defendant with felony assault

8    with a dangerous weapon inflicting bodily injury and aiding and

9    abetting the same.  (Dkt. 48).  The government anticipates that

10   defendant may seek to raise an affirmative defense of self-defense at

11   trial.  He should be precluded from doing so.

12        For defendant to argue self-defense in this case, he is required

13   to first make an offer of proof that: (1) he reasonably believed that

14   the use of force was necessary to defend himself against the

15   immediate use of unlawful force, and (2) he used no more force than

16   reasonably necessary in the circumstances.  <u>See</u> Ninth Circuit Model

17   Criminal Jury Instruction No. 8.3 (2022 ed.).  He has not proffered

18   such an offer of proof, and he cannot.

19        The Home Depot surveillance video – manually filed with the

20   Court as Gov't Exhibit A – shows defendant advancing on uniformed

21   Border Patrol agents guarding federal property and repeatedly

22   throwing chunks of broken cinderblock at them from behind a tree

23   line.  The relevant footage depicts the defendant approaching,

24   retrieving, and launching cinderblock pieces at the agents.  (Gov't

25   Ex. A at 3:24:14 to 3:26:06 p.m.)  These were agents who were at that

26   point engaged in lawful crowd-control operations.  Because there is

27   no evidence that officers used or threatened unlawful force against

28

him, defendant cannot make the minimal showing required to assert self-defense at trial.

**II.   STATEMENT OF FACTS**

    **A.   Defendant Assaults a Law Enforcement Officer**

On June 7, 2025, a protest took place near the Homeland Security Investigations ("HSI") facility in Paramount, California, sparked by a mistaken belief that an immigration raid was occurring at a nearby Home Depot store. What began as a peaceful demonstration escalated into a violent confrontation when protestors began throwing rocks and broken pieces of cinderblock at federal agents. After law enforcement declared an unlawful assembly and used less-than-lethal munitions to disperse the crowd, most protestors departed. Defendant, however, remained at the scene. He joined a small group that hid behind bushes, a tree, and a makeshift shield to advance toward the skirmish line and launch projectiles at Border Patrol agents.

At one point, a large man wearing a balaclava-style mask retrieved a pallet of cinderblocks from the rear of the Home Depot, smashed it on the ground, and -- along with defendant and others -- used the pieces to continue the assault. Below is a screenshot from the Home Depot's surveillance footage showing defendant hiding behind his shield and gesturing to the man who smashed the cinderblock to hand him a piece:



In the Home Depot video footage manually filed as Government Exhibit A, between 3:24:14 and 3:26:06, defendant is captured crouching behind a green pickup truck, picking up cinderblock pieces, and hurling them toward the agents.  The sequence includes:

- **3:24:14** – Defendant walks from the grass/public street area into the Home Depot lot.

- **3:24:28** – Defendant crouches in front of a green pickup truck and picks up a piece of cinderblock.

- **3:24:30** – The cinderblock is clearly visible in Defendant's hand.

- Defendant then returns to the grassy area, positions himself behind a shield, and moves between trees to obtain a better throwing angle.

- **3:25:10** – Using video zoom function, it is apparent that Defendant takes a step back and throws the rock.

- **3:25:40** – After no longer holding the first rock, Defendant is seen picking up a second object and returning to the same position where agents observed him throwing rocks.

Defendant and those he was aiding and abetting struck at least two agents, one of whom suffered a bloodied shin through his pants from the impact.

3

The video confirms that the clothing of the individual shown throwing cinderblock chunks matched that of defendant at the time of his later arrest (white socks, white sneakers with a black Nike swoosh, and a black tank top), and the victim-agents reaffirmed that the same person (meaning, defendant) had struck them with the cinderblocks.

Defendant was arrested that same day after one of the injured agents identified him as an aggressor.  On August 5, 2025, the grand jury returned a single-count felony indictment charging defendant with assault on a federal officer using a deadly and dangerous weapon resulting in bodily injury, in violation of 18 U.S.C. §§ 111(a)(1), (b), and aiding and abetting, in violation of 18 U.S.C. § 2(a). (Dkt. 48.)

**III. ARGUMENT**

**A.    Legal Standard**

"If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial."  United States v. Cramer, 532 F. App'x 789, 791 (9th Cir. 2013) (upholding order excluding self-defense theory at trial when defense proffer was insufficient to meet elements as matter of law); see also United States v. Biggs, 441 F.3d 1069, 1071 (9th Cir. 2006) (discussing requirement defendant proffer elements of self-defense before trial).

While the prima facie burden is not high, the defendant must still offer "evidence upon which the jury could rationally sustain the defense."  United States v. Houston, 648 F.3d 806, 816 (9th Cir. 2011).  As the Supreme Court has made clear, the requirement that a defendant first establish a prima facie case for each element of an

affirmative defense is an important protection against "wasting valuable trial resources." United States v. Bailey, 444 U.S. 394, 417 (1980).

An individual may make out an affirmative defense of self-defense against a federal law enforcement official who uses excessive force only in a "narrow range of circumstances." United States v. Acosta-Sierra, 690 F.3d 1111, 1126 (9th Cir. 2012). To do so, "a defendant must offer evidence to show: '(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances.'" Id. (citing United States v. Urena, 659 F.3d 903, 907 (9th Cir. 2011)).[1]  The Ninth Circuit has long held that "an individual who is the attacker cannot make out a claim of self-defense as a justification for an assault." Acosta-Sierra, 690 F.3d at 1126 (citation omitted).

### B.    Defendant Cannot Establish a Prima Facie Case for Self-Defense

Defendant cannot show that he reasonably believed force was necessary to defend himself against the immediate use of unlawful force. There is no evidence that any Border Patrol Agent used force -- lawful or unlawful -- toward defendant before he engaged in the assaultive conduct. Agents acted lawfully to protect federal

---

[1] Model Instruction 8.3 lays out the two potential self-defense theories to assault on a federal officer. The first is when defendant does not know the victim is a federal officer. Ninth Circuit Model Criminal Jury Instructions, No. 8.3 (2022 ed.). The government does not understand defendant to be pursuing this theory of self-defense. Nor could he. Border Patrol agents at the scene were all in roughly the same fully marked, distinctive uniform bearing visible "POLICE" and "U.S. BORDER PATROL" identifiers, and they were positioned in a line protecting federal property. Ignorance of official status is not tenable on this record.

1    personnel and property.  The Home Depot surveillance video shows

2    defendant crouched behind a pickup truck, retrieving debris, then

3    returning to cover behind trees and a shield to obtain a better angle

4    before launching the cinderblock.  Simply put, he was the aggressor,

5    not a victim.  Self-defense is categorically unavailable to an

6    aggressor who initiates force against officers performing their

7    duties.  See Acosta-Sierra, 690 F.3d at 1126 (citation omitted);

8    United States v. McNeal, 765 F. App'x 193, 194 (9th Cir. 2019)

9    (defendant "foreclosed from presenting a theory of self-defense

10   because he preemptively attacked").

11       Second, even if defendant subjectively believed that his actions

12   were necessary, his use of force was grossly disproportionate.

13   Throwing chunks of concrete capable of inflicting serious bodily

14   injury far exceeds what could ever be deemed "reasonably necessary."

15       The Ninth Circuit has emphasized that a self-defense instruction

16   is warranted only where the evidence could support a finding of

17   excessive force by law enforcement.  Acosta-Sierra, 690 F.3d at 1126.

18   Here, there is no such evidence.  The deployment of less-than-lethal

19   munitions occurred in response to sustained assaults on federal

20   agents and was objectively lawful.  Any speculative or generalized

21   claims of "police overreaction" cannot substitute for evidence of

22   immediate unlawful force directed at him personally.

23       Finally, allowing a self-defense theory in these circumstances

24   would mislead the jury and waste judicial resources.  The prima facie

25   requirement exists precisely to prevent such misuse of trial time.

26   Bailey, 444 U.S. at 417.  Where the undisputed evidence -- including

27   Exhibit A -- shows that defendant was the aggressor, no reasonable

28   jury could find that he acted in lawful defense of himself.

## IV.  CONCLUSION

Defendant cannot establish the elements of self-defense under any recognized theory.  The undisputed evidence shows that he was the aggressor and that federal agents acted lawfully in response to violent attacks.  The government therefore respectfully requests that the Court preclude defendant from arguing or presenting evidence of self-defense at trial.

**DEFENDANT'S POSITION**

**MEMORANDUM OF POINTS AND AUTHORITY**

**I.        INTRODUCTION**

A criminal defendant "has a constitutional right to have the jury instructed according to his theory of the case, provided that the instruction is 'supported by law and has some foundation in the evidence.'" *United States v. Johnson*, 459 F.3d 990, 992 (9th Cir. 2006) (citation omitted). A defendant is entitled to a jury instruction on a legally cognizable defense where "there exists evidence sufficient for a reasonable jury to find in his favor." *Matthew v. United States*, 458 U.S. 58, 63 (1988). In the Ninth Circuit, "[u]se of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force." Ninth Cir. Model Jury Instruction 5.10 (Self-defense). "The prima facie burden [to raise a theory of self-defense] is not a high one." *United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (finding that a defendant is entitled to this instruction when "there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.").

Here, as the government must be aware, the evidence more than exceeds this low threshold. Mr. Terrazas can establish that he has a viable theory of self-defense because Border Patrol Agent Lorenzo Cordero and agents around him engaged in an excessive use of force. Although the government's motion purports to contain a frame-by-frame recitation of Mr. Terrazas's conduct on June 7, there are obvious, glaring omissions in the government's account of the events that day. Specifically, though the government boldly claims that "there is no

8

evidence that officers use or threatened unlawful force" against Mr. Terrazas, body worn camera footage from the very agent who claims to be a victim in this case shows the opposite. Specifically, the video evidence that the government chose to not provide to this Court shows that in the seconds and minutes preceding the alleged assault, Agent Cordero was indiscriminately firing his service weapon towards civilians. (Defense Exhibit A.)

The Court should therefore deny the government's motion, allow Mr. Terrazas to present such a defense, and permit the jury to resolve this factually laden dispute.

## II.    LEGAL STANDARD

"[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States,* 485 U.S. 58, 63 (1988); *United States v. Chi Tong Kuok*, 671 F.3d 931, 947 (2012) ("Factfinding is usually a function of the jury, and the trial court rarely rules on a defense as a matter of law." (internal citation omitted)). "The legal standard is generous [because] a defendant is entitled to an instruction concerning his theory of the case if the theory is legally sound and evidence in the case makes it applicable, even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility. A defendant needs to show only that there is evidence upon which the jury could rationally sustain the defense." *United States v. Houston*, 648 F.3d 806, 816 (9th Cir. 2011) (quoting *United States v. Kayser*, 488 F.3d 1070, 1076 (9th Cir. 2007)). "If there are factual disputes in the record, the court is not permitted to weigh the evidence, make credibility determinations,

or resolve conflicts in the proof. If the parties argue competing inferences, t*he court must draw all reasonable inferences in favor of the defendant's [defense] theory*." *United States v. Perez-Rodriguez*, 13 F.4th 1, 19 (1st Cir. 2021) (internal quotation marks omitted) (emphasis added); *United States v. Butler*, 2025 WL 621892, at *9 (N.D. Cal. Feb. 26, 2025) ("In making this determination about the adequacy of the *prima facie* case [for self-defense], the evidence is 'construed in the light most favorable' to the defendant." (quoting *United States v. Ehmer*, 87 F.4th 1073, 1130 (9th Cir. 2023))). Thus, when a court considers the sufficiency of a self-defense defense, it "must accept [the defendant's] proffer as true in its entirety." *Kuok*, 671 F.3d at 947.

"[F]or purposes of Section 111, . . . [an] individual may make out an affirmative defense of self-defense against a federal law enforcement official who uses excessive force in a narrow range of circumstances." *United States v. Acosta-Sierra*, 690 F.3d 1111, 1126 (9th Cir. 2012); *United States v. Span*, 970 F.2d 573, 577 (9th Cir. 1992) ("[T]he model instruction [8.3] would be inappropriate in a case where a defendant's theory of the case is self-defense against the use of *excessive* force by a federal law enforcement officer."). To offer an excessive force self-defense, a defendant need only offer some—even weak, inconsistent, or insufficient—evidence to show: "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force; and (2) the use of no more force than was reasonably necessary in the circumstances." *Acosta-Sierra*, 690 F.3d at 1126 (internal quotation omitted); *United States v. Burleson*, No. 17-10319, 2023 WL 5275176, at *4 (9th Cir. Aug. 16, 2023) (repeating the standard); *Span*, 970

1  F.2d 580 (noting that an individual has a right to offer reasonable
2  resistance to arrest that is triggered by the officer's bad faith or
3  provocative conduct). These are the same elements applicable in a
4  "general self-defense instruction." *United States v. Ornelas*, 906
5  F.3d 1138, 1146-48 (9th Cir. 2018).

6      The defendant does **not** need to demonstrate that the force was
7  excessive as a matter of law. Unlike in the civil context, whether
8  the force was unlawful is judged from the perspective of the
9  defendant, **not** from the perspective of an officer. *United States v.*
10 *Celentano*, 126 F.4th 680, 687 (D.C. Cir. 2025) ("[T]he instruction
11 given to the jury on the defense of another improperly required the
12 jury to consider the use of force from a reasonable officer's
13 perspective, rather than from Celentano's perspective.") For a
14 pretrial offer of proof, there need only be *some evidence* from which
15 a jury could "find that the defendant actually and reasonably
16 believed the officer was using excessive force." *United States v.*
17 *Celentano*, 126 F.4th 680, 687 (D.C. Cir. 2025) (citing and relying on
18 *Acosta-Sierra*, 690 F.3d at 1126). The only limitation is that "an
19 individual who is the attacker cannot make out a claim of self-
20 defense as a justification for an assault." *Acosta-Sierra*, 690 F.3d
21 at 1126.

22     For the reasons stated below, Mr. Terrazas meets the incredibly
23 low threshold for a theory of self-defense.

24                    **III.   ARGUMENT**

25     The anticipated evidence at trial meets the low threshold
26 required for Mr. Terrazas to present a self-defense theory of the
27 case. The Court should not preclude this defense at this stage of the
28 trial, and the jury should be instructed accordingly if Mr. Terrazas

                              11

raises a theory of self-defense. Failing to instruct on self-defense when there is any evidence to support it is reversible error. *United States v. Pierre*, 254 F.3d 872, 876 (9th Cir. 2001).

**A.    Nothing Requires Mr. Terrazas to Make an Offer of Proof to the Government, and the Government's Response to Mr. Terrazas's Proffered Evidence Is Irrelevant to the Court's Analysis.**

Mr. Terrazas is required to make an offer of proof for self-defense to the Court, not the government. *See United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006); *see also United States v. Gurolla*, 333 F.3d 944, 953 (9th Cir. 2003) ("On appeal, as in the district court, the government has the right to argue for exclusion of the entrapment defense but, as in the district court, the only evidence it will ordinarily be able to refer to is evidence that it may have filed in support of its own motion to exclude and whatever other unsealed evidence may already be before the court."). Any response the government may have to Mr. Terrazas's offer of proof is not relevant to the Court's analysis. *See United States v. Perez-Rodriguez*, 13 F.4th 1, 19 (1st Cir. 2021) ("If the parties argue competing inferences, the court must draw all reasonable inferences in favor of the defendant's [defense] theory." (emphasis added); *Kuok*, 671 F.3d at 947 ("[A court] must accept [the defendant's] proffer as true in its entirety."); *Butler*, 2025 WL 621892, at *9 (holding a defendant met his low burden to establish a prima facie case for self-defense and explaining that, for a "*prima facie* case [of self-defense], the evidence is 'construed in the light most favorable' to the defendant" (quoting *Ehmer*, 87 F.4th at 1130))). That is because the Court must draw *every* reasonable inference in favor of Mr. Terrazas. *Id.*

Mr. Terrazas is not required to reveal every detail of his theory of defense to the government, and courts have long considered offers of proof made *in camera*. *See, e.g.*, *Gurolla*, 333 F.3d at 953 (reviewing offer of proof on entrapment defense); *United States v. Peltier*, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam) (reviewing offer of proof made *in camera* by defendant's counsel below); *United States v. Williams*, 791 F.2d 1383, 1387 (9th Cir. 1986) (reviewing oral and written offers of proof made *in camera* below). Accordingly, should the Court be inclined to grant the government's motion, Mr. Terrazas requests the opportunity to make an additional, *in camera* proffer. However, Mr. Terrazas maintains that on the record now before the Court, the Court should hold that he has made a sufficient showing as to self-defense and should be permitted to raise it at trial if he chooses to do so.

**B.  There Is Sufficient Evidence From Which a Jury Could Conclude Agent Cordero Used Excessive Force.**

To bring a theory of self-defense against a charge of assault of a federal employee, Mr. Terrazas can establish that Border Patrol Agent Lorenzo Cordero used excessive force against him.[2] As the government has conceded in recent litigation, targeting sensitive areas like the head, neck, spine, or groin, is inappropriate unless the use of deadly force is justified. *See, e.g.*, *L.A. Press Club v. Noem*, Case No. 2:25-CV-5563-HDV, Dkt. 55 at 32:6-10. Yet Border

---

[2] Given the Border Patrol agents' use of their weapons on civilians, the defense has requested in discovery the CBP use of force manual. Initially, the government responded that it had no obligation to produce such manual or policy and did not intend to do so. Recently, and after the defense initiated a meet and confer process and indicated that it would seek the Court's intervention, the government has stated that it will produce the manual. As of the time of this writing, the government has not yet provided the manual to the defense.

Patrol agents, including Agent Cordero and those agents immediately next to him did just that, firing indiscriminately towards civilians.

The government's contention that "there is no evidence that officers used or threatened unlawful force" against Mr. Terrazas is flatly contradicted by Agent Cordero's own body worn camera recording. (Defense Exhibit A.) That footage shows that Agent Cordero deployed some combination of rubber bullets, pepper balls, tear gas, and other crowd control weapons in the minutes and seconds leading up to the alleged assault by Mr. Terrazas. The body worn camera footage shows that by the time he is allegedly struck by a rock or piece of cinderblock, the street in front of him is littered with apparent tear gas cannisters and/or rubber bullets, and the air is filled with smoke from tear gas deployed by Border Patrol agents.

Mr. Terrazas was injured by Border Patrol agents on June 7. Following his arrest, he made his initial appearance, where defense counsel noted on the record that his medical condition was gravely concerning; among other things, defense counsel noted that Mr. Terraza was demonstrating signs of a traumatic brain injury, including photo-sensitivity, blurred version, trouble reading, a headache, and one of his eyes drifting to the side involuntarily. *See* Dkt. 16 at 4:8-16.

It is of no moment that the government views the videos in this case and draws a different inference or can come up with some other explanation for Agent Cordero's conduct or Mr. Terrazas's injury-- these are questions of fact for the jury. *See Chi Tong Kuok*, 671 F.3d at 947 ("Factfinding is usually a function of the jury, and the trial court rarely rules on a defense as a matter of law.").

14

The fact that Agent Cordero and his colleagues unceasingly fired their service weapons at Mr. Terrazas is sufficient for a jury to rationally conclude that Mr. Terrazas "actually and reasonably believed [Agent Cordero] was using excessive force." *Celentano*, 126 F.4th at 687.

## C. There is Sufficient Evidence from Which a Jury Could Conclude Mr. Terrazas Believed He Needed to Defend Himself Against Agent Cordero's Use of Unlawful Force.

Mr. Terrazas needs to establish only that a reasonable jury *could* find that he had a "reasonable belief that the use of force was necessary to defend [herself] against the immediate use of unlawful force." *See* 9th Cir. Model Instructions Nos. 5.10; *Acosta-Sierra*, 690 F.3d at 1126. In assessing reasonableness of a defendant's belief, it "is not assessed in the abstract. Rather, any assessment of the reasonableness of a defendant's actions must take into account the defendant's particular circumstances, at least to a certain extent." *United States v. Lopez*, 913 F.3d 807, 819-20 (9th Cir. 2019) (internal quotation omitted). When assessing the reasonableness of Mr. Terrazas's actions in this case, his individual characteristics contribute to his state of mind and the reasonableness of his actions. *See United States v. Saenz*, 179 F.3d 686, 689 (9th Cir. 1999) (reversing conviction where district court improperly excluded evidence relating to defendant's state of mind for purpose of his self-defense theory). A jury could consider any, or all, of these factors when determining Mr. Terrazas's state of mind to find that he had a reasonable belief that using force was necessary.

Mr. Terrazas was in Paramount on June 7 because he lives in the area where a crowd gathered to register their objection to the immigration raids that had just begun in Los Angeles. While doing so,

15

1    he was repeatedly shot at by Border Patrol agents, including Agent

2    Cordero. Mr. Terrazas was unarmed. Mr. Terrazas was not wearing armor

3    or protective gear like the Border Patrol agents. Mr. Terrazas is a

4    young man of slight stature. When agents began firing directly at

5    civilians, including Mr. Terrazas, Mr. Terrazas defended himself

6    against an immediate and unlawful use of excessive force. Given the

7    Border Patrol agents' hostile approach, aggressive posture, and

8    willingness to hit civilians with gas cannisters and flash bang

9    grenades, it was entirely reasonable for Mr. Terrazas to believe he

10   was about to defense himself against the continued excessive force.

11       Because the threshold is so low for a theory of self-defense,

12   and because all inferences must be drawn in his favor, Mr. Terrazas

13   has made a sufficient showing that he had a "reasonable belief that

14   the use of force was necessary to defend [himself] or another against

15   the immediate use of unlawful force." Ninth Cir. Model Instructions

16   No. 5.10.

17   **D.    Mr. Terrazas Did Not Use More Force Than Necessary.**

18       To the extent that Mr. Terrazas used any force against Agent

19   Cordero, he did not use any more force than necessary. Accordingly,

20   Mr. Terrazas can meet his burden on this final prong for a theory of

21   self-defense. *See* 9th Cir. Model Instructions Nos. 5.10.

22       The government's theory of the case relies on alternative means

23   of proving guilt. Relevant here, the government claims that Mr.

24   Terrazas threw a rock that struck Agent Corder in the shin. The

25   defense disputes this occurred, or that it constituted an assault. In

26   any event, even under the government's theory, Mr. Terrazas did not

27   advance on Agent Cordero or escalate the situation. To the contrary,

28   the video evidence demonstrates that at the time of the alleged rock

16

strike, Agent Cordero was increasing the frequency of the munitions that he was firing into the crowd. At most, Mr. Terrazas's force was responsive to Agent Codero's and pales in comparison. He sought only to protect himself from the aggression of Agent Cordero. The force used was necessary given the circumstances.

*    *    *

The Court should join the other judges in this district who have denied the government's motion in limine in protest- and immigration-related cases prepared for trial this year. *See, e.g.*, *United States v. Augustine*, 2:25-cr-00678-KS, Dkt. 55 (C.D. Cal. Oct. 6, 2025); *United States v. Lopez*, 2:25-cr-00705-MEMF, Dkt. 71 (C.D. Cal. Nov. 6, 2025); *United States v. Carreno*, 2:25-cr-00772-MWF, Dkt. 43 (C.D. Cal. Nov. 3, 2025); *United States v. Ramirez-Vasquez*, 2:25-cr-00759-AH, Dkt. 54 (C.D. Cal. Nov. 5, 2025); *United States v. Ramos-Brito*, 2:25-cr-00501-SVW, Dkt. 108 (C.D. Cal. Sept. 15, 2025); *United States v. Zaitsev*, 2:25-cr-00154-SPG, Dkt. 82 (C.D. Cal. May 7, 2025).

**IV.    CONCLUSION**

Mr. Terrazas can meet the incredibly low threshold burden for a prima facie showing of the elements of self-defense. The Court should deny the Government's Motion *In Limine* No. 1 and refuse to exclude a theory of self-defense at trial.

**DECLARATION OF GABRIELA RIVERA**

I, Gabriela Rivera, declare:

I am an attorney with the Office of the Federal Public Defender for the Central District of California. I am licensed to practice law in the State of California and I am admitted to practice in this Court.

1        I am appointed to represent Mr. Terrazas in United States v.

2    Terrazas, Case No. 2:25-cr-00500-PA.

3        Attached as **Exhibit A** to the defense's Opposition to the

4    Government's Motion In Limine No. 1 to Preclude Self-Defense

5    Arguments is a true and correct copy of an excerpt of a video that

6    was produced by the government in this litigation.

7

8        I declare under penalty of perjury under the laws of the United

9    States of America that the foregoing is true and correct.

10       Executed on December 9, 2025, at Los Angeles, California.

11

12                                      */s/ Gabriela Rivera*     .

13                                      GABRIELA RIVERA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                    **GOVERNMENT'S REPLY**

2  **I.    INTRODUCTION**

3         Defendant's opposition does not identify a single piece of

4  evidence showing that, <u>before</u> he repeatedly threw cinderblock chunks

5  at Border Patrol agents, he was subjected to any "immediate use of

6  unlawful force" as required to assert self-defense.  Ninth Cir. Model

7  Criminal Jury Instruction 8.3; <u>Acosta-Sierra</u>, 690 F.3d at 1126.

8  Instead, defendant relies almost entirely on irrelevant Body-Worn

9  Camera ("BWC") footage recorded hours after defendant's conduct.[3]

10        Self-defense is categorically unavailable to an initial

11  aggressor, <u>Acosta-Sierra</u>, 690 F.3d at 1126, and defendant's theory

12  hinges on conflating two entirely separate events separated by time.

13  Simply put, the law does not permit a defendant to travel to a line

14  of federal officers guarding federal property, initiate a violent

15  assault, and then claim self-defense based on conduct that occurred

16  hours later under more extreme circumstances.  Subjective intent and

17  reasonableness cannot jump around time in a non-linear fashion.  It

18  is wedded to what was happening at or near the time of an assault.

19  No reasonable inference supports such a theory.

20        Defendant thus fails to meet even the "not high" prima facie

21  standard for asserting self-defense.  His motion does not identify

22  any evidence -- weak, inconsistent, or otherwise -- from which a

23

24  ─────────────────────

25        [3] The relevant video — the Home Depot surveillance footage the
    government manually filed by as Government Exhibit A — captures

26  defendant's assaultive conduct between the internal counter marks of
    3:24:14 and 3:26:06.  For clarity, these timecodes refer to the video

27  player's internal counter, not the wall-clock time of the incident.
    The underlying Home Depot surveillance timestamp reflects that

28  defendant's conduct occurred between approximately 13:29 (1:29 p.m.)
    and 13:31 (1:31 p.m.), well before the later BWC footage cited in
    defendant's opposition.

                                    19

rational jury could conclude that his violent conduct was <u>responsive</u> to immediate unlawful force directed at him.   The Court should therefore grant the government's motion.

**II.   ARGUMENT**

**A.   Defendant's Offer of Proof Does Not Satisfy the Required Prima Facie Showing**

<u>First</u>, defendant incorrectly suggests that he must be permitted to make an offer of proof solely to the Court, outside the government's view.   The cases he cites — <u>United States v. Biggs</u>, 441 F.3d 1069 (9th Cir. 2006), <u>United States v. Gurolla</u>, 333 F.3d 944 (9th Cir. 2003), and others — do not support this proposition.   None hold that a defendant is entitled to present a secret, <u>in camera</u> proffer as a matter of right.   <u>Biggs</u> addressed whether the district court improperly required an additional element for self-defense; it said nothing about <u>in camera</u> submissions.   <u>Gurolla</u> concerned a post-trial appellate dispute regarding materials the government did not argue should be unsealed until the case proceeded on appeal; it set no rule that a defendant must be permitted to make his offer of proof in camera.   The government would object to any <u>in camera</u> filing on this matter as the government would be unable to appropriately respond.

<u>Second</u>, defendant's insistence that the government's responses to his proffer are irrelevant misstates the standard.   While factual disputes must be resolved in the defendant's favor, courts are not required to accept implausible inferences or speculative theories that no reasonable jury could adopt.   Accepting defendant's assertions "as true" does not mean indulging interpretations contradicted by objective evidence — including video that irrefutably

shows him acting as an aggressor. "[W]here the evidence proffered ... is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate." United States v. Tokash, 282 F.3d 962, 967 (7th Cir. 2002).

### B. Defendant Cannot Show He Faced the Immediate Use of Unlawful Force

Ultimately, defendant correctly recognizes that he must make a prima facie showing that he acted (1) in response to the immediate use of unlawful force, and (2) used no more force than reasonably necessary. But his opposition fails for a simple reason: defendant identifies no evidence — weak, inconsistent, or otherwise — that any federal officer directed unlawful force at him before he repeatedly threw cinderblock chunks of concrete at them. As demonstrated in Government Exhibit A,[4] defendant – without any provocation by a federal agent – concealed himself behind a tree, retrieved broken cinderblock pieces, and threw them at agents stationed across the street at the entrance to federal property. As depicted, defendant was not surrounded, trapped, or subjected to unlawful force. Rather, he advanced on the officers, he collected his weapon, he positioned himself, and he initiated the assault. At no point was defendant in any sort of danger of unlawful force. Indeed, as depicted in Government Exhibit A, agents did not even approach defendant before he launched his barrage.

Defendant's reliance on later body-worn camera footage cannot satisfy his burden. The footage he cites — recorded hours after defendant began throwing rocks — simply cannot retroactively

---

[4] Timestamp 1:29 p.m. to 1:31 p.m.

transform him into a victim of "immediate unlawful force" at the
moment he attacked.  The Ninth Circuit is clear: "An individual who
is the attacker cannot make out a claim of self-defense."  See
Acosta-Sierra, 690 F.3d at 1126.  Defendant's attempt to shift the
timeline after the fact does not alter that immutable legal rule, and
defendant does not -- and cannot -- cite any authority suggesting
that force a federal officer uses long after a defendant's assault
can serve as the predicate for a self-defense instruction.  Agents
were stationary and guarding the entrance to federal property.
Defendant's conduct was entirely unprovoked and cannot transform into
reasonable self-defense based on unrelated conduct.

   **C.   Defendant Cannot Establish a Reasonable Belief in the
         Necessity of Force**

       Defendant's claim that his subsequent physical condition — as
represented by counsel at his initial appearance — helps establish
his state of mind when throwing concrete blocks at agents hours
earlier is unsupported by any authority.  The relevant inquiry is
whether he reasonably believed, at the time he acted, that force was
necessary to prevent the immediate use of unlawful force.  The
surveillance footage forecloses this: the agents did not engage him.
Instead, defendant sought them out and attacked from a concealed
position.

       Defendant also attempts to reframe generalized crowd-control
measures used later in the day — after sustained assaults on officers
by multiple individuals, including defendant — as evidence that he
believed excessive force was being used at the earlier time of his

assault.[5]  Even crediting defendant's version of the later events, no rational inference connects the BWC footage to defendant's earlier decision to approach officers positioned at the entrance to federal property and attack them from concealment.  This is not a "conflict in the proof" or a factual dispute for the jury—there is no legally cognizable connection.  No reasonable jury could draw such an inference.  The law requires immediacy.  Ninth Cir. Model Instruction 8.3; <u>Acosta-Sierra</u>, 690 F.3d at 1126.  Defendant's interpretation would erase that requirement entirely.

**D.  Defendant Use of Force Was Disproportionate as a Matter of Law**

Further, even if defendant could establish a reasonable belief that force was necessary – which he cannot –, he cannot establish that his conduct was proportional.  Launching hard, jagged cinderblock fragments from a concealed position at agents guarding federal property alongside others is dangerous conduct.  It was an ambush.  An ambush cannot be deemed reasonable or proportional under these circumstances.  Defendant was not "responding" to anything.  Government Exhibit A makes that unmistakable.

---

[5] Defendant suggests that the government initially "refused" to produce CBP's use-of-force policy and has only recently agreed to provide it following the defense's meet-and-confer request.  That characterization omits critical context.  As the government explained during the parties' discussions: "For the sake of consistency, we will produce the applicable CBP use-of-force policies.  That said, we maintain our position that these materials are irrelevant to any claim or defense in this case.  The government intends to include in its self-defense motion in limine a request that the Court exclude any reference to CBP's use-of-force policy at trial."  The government's position has therefore been consistent from the outset— namely, that although the policies will be produced in discovery, they have no bearing on the legal viability of defendant's self-defense theory and should not be admitted or referenced at trial.  The timing of production reflects nothing more than the government's effort to ensure uniform handling of such materials, not any concession that the policies are relevant here.

### E.    Defendant Reliance on Other District Court Rulings Is Misplaced

Finally, defendant cites several recent district court orders in unrelated protest-related cases.  Those matters involved different facts, different evidentiary records, and different procedural postures.  Crucially, defendant omits <u>United States v. Baca</u>, 5:24-cr-00133-JAK, in which another court in this District recently precluded a self-defense theory where, as here, the defendant was the aggressor.  The legal standard does not vary based on the political context of a protest; it applies uniformly.  Where a defendant initiates force against federal officers performing their duties, self-defense is unavailable.

## III. CONCLUSION

For these reasons, the government respectfully requests that the Court grant the government's Motion in Limine No. 1 and preclude defendant from arguing or presenting evidence of self-defense at trial.

**DECLARATION OF ERIC L. MACKIE IN SUPPORT OF GOVERNMENT'S MOTION IN LIMINE NO. 1 TO PRECLUDE SELF-DEFENSE ARGUMENTS**

I, Eric L. Mackie, hereby declare as follows:

1.    I am an Assistant United States Attorney for the Central District of California and the attorney assigned to represent the United States in United States v. Jacob Daniel Terrazas, Case No. 2:25-cr-00500-PA.  I make this declaration in support of the government's Motion in Limine No. 1 to Preclude Self-Defense Arguments.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

2.    The government moves to preclude the defense from referencing, presenting evidence of, or arguing at trial that defendant Jacob Terrazas acted in lawful self-defense when he threw chunks of broken cinderblock at uniformed Border Patrol Agents during the June 7, 2025 Paramount incident.  The specific matter the government seeks to exclude includes: (a) any testimony, argument, or implication that defendant reasonably believed he needed to use force to defend himself against the immediate use of unlawful force by federal agents; and (b) any testimony, argument, or implication that defendant's use of force was reasonably necessary or proportional.

As set forth in the Motion, the Home Depot surveillance footage that captures defendant's conduct shows that defendant was the aggressor, initiated force, and was not subject to any threat or use of unlawful force before he threw cinderblock chunks at federal agents.

3.    I have discussed the subject of this motion with defense counsel, Deputy Federal Public Defenders Gabriela Rivera and Ryan

25

Shelley, and explained the government's position that no evidence exists to support a prima facie self-defense theory and that the government would seek an order precluding such a defense.  Counsel has not agreed to stipulate that self-defense arguments or evidence will not be mentioned in the presence of the jury unless first approved by the Court.  Accordingly, this motion is necessary to avoid the introduction of inadmissible and prejudicial matter at trial.

4.   If the defense is allowed to introduce or suggest a self-defense theory without first meeting its prima facie burden, the government will suffer significant and unfair prejudice.  Permitting unsupported self-defense argument risks: (a) misleading the jury into believing that officers used unlawful force when no such evidence exists; (b) confusing the jury about the legal elements of 18 U.S.C. § 111(a) and (b); (c) inviting improper sympathy for the defendant or unwarranted scrutiny of lawful law-enforcement crowd-control efforts; and (d) wasting trial time litigating a legally unavailable affirmative defense.

Allowing argument on a theory that the Ninth Circuit holds is categorically unavailable to an aggressor would undermine the fairness and efficiency of the trial.

//

//

1    5.    For these reasons, the government respectfully requests

2 that the Court grant Motion in Limine No. 1 and preclude any

3 reference to or argument concerning self-defense at trial.

4 I declare under penalty of perjury under the laws of the United

5 States of America that the foregoing is true and correct, and that

6 this declaration is executed at Los Angeles, California on December

7 15, 2025.

8

9                                   /s/ Eric L. Mackie
                                    _____
10                                  ERIC L. MACKIE
                                    Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28