TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
ERIC L. MACKIE (Cal. Bar No. Pending)
Assistant United States Attorney
BRENDA N. GALVÁN (Cal. Bar No. 296456)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3289 / 4850
    Facsimile: (213) 894-0141
    E-mail:   eric.mackie@usdoj.gov
             brenda.galvan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>         v.<br><br>JACOB DANIEL TERRAZAS,<br><br>       Defendant. | No. 2:25-cr-00500-PA<br><br>GOVERNMENT'S MOTION IN LIMINE No. 2 TO PRECLUDE IRRELEVANT AND PREJUDICIAL POST-ASSAULT EVIDENCE<br><br>Hearing Date: January 14, 2026<br>Hearing Time: 3:00 p.m.<br>Location:    Courtroom of the<br>           Hon. Percy Anderson |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Eric L. Mackie and Brenda N. Galván, hereby submits this motion in limine to preclude defendant Jacob Daniel Terrazas from presenting irrelevant and prejudicial post-assault evidence at trial.

    This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further

evidence and argument as the Court may permit. In compliance with the Court's Order Re: Criminal Trial, this joint filing contains (1) the government's motion in limine, (2) defendant's opposition to the motion, and (3) the government's reply in support of its motion. Also attached to this filing is the required declaration from the government as the moving party.

Dated: December 15, 2025          Respectfully submitted,

                                   TODD BLANCHE
                                   Deputy Attorney General

                                   BILAL A. ESSAYLI
                                   First Assistant United States
                                   Attorney

                                   ALEXANDER B. SCHWAB
                                   Assistant United States Attorney
                                   Acting Chief, Criminal Division

                                   /s/ Eric L. Mackie
                                   ERIC L. MACKIE
                                   BRENDA N. GALVÁN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

Dated: December 15, 2025          CUAUHTEMOC ORTEGA
                                   Federal Public Defender

                                   /s/ Gabriela Rivera
                                   GABRIELA RIVERA
                                   RYAN SHELLEY
                                   Deputy Federal Public Defenders

                                   Attorneys for Defendant
                                   JACOB DANIEL TERRAZAS

*Local Civil Rule 5-4.3.4 Attestation: I attest that all other signatories listed concur in the filing's content and have authorized the filing.

                                   /s/ Eric L. Mackie
                                                    ERIC L. MACKIE

1   <u>**GOVERNMENT'S MOTION IN LIMINE: MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.    INTRODUCTION**

3        In June 2025, defendant Jacob Daniel Terrazas ("defendant")

4   threw chunks of a smashed-up cinder block at a line of Border Patrol

5   agents who were attempting to protect federal personnel and property

6   in Paramount, California, during a protest that turned violent.  The

7   government charged defendant with assault on a federal officer with a

8   dangerous weapon resulting in bodily injury, in violation of 18

9   U.S.C. §§ 111(a)(1), (b), and aiding and abetting, in violation of 18

10  U.S.C. § 2.

11       The government anticipates that defendant may seek to introduce

12  evidence or argument relating to the takedown and arrest that

13  occurred after the assault, such as officers' use of force to

14  restrain defendant or defendant's physical appearance afterward.  A

15  publicly available video of the arrest – which is unrelated to the

16  defendant's assaultive conduct -- is available at

17  https://www.youtube.com/shorts/iKN0v9E3aSA.  The video, shot by a

18  bystander, shows multiple law-enforcement officers moving to detain

19  defendant after the assaultive conduct had concluded.

20       Any attempt by defendant to introduce evidence or argument

21  relating to his post-assault arrest -- including footage, stills,

22  testimony, or commentary concerning the takedown, restraint

23  techniques, or his physical appearance afterward -- should be

24  excluded under Federal Rules of Evidence 401 and 403. The arrest

25  occurred well after the charged assault had ended, bears no relevance

26  to the elements of §§ 111(a)(1), (b), and risks confusing the jury

27  and unfairly shifting focus from the assault to officers' subsequent

28  use of force.

1  **II.   STATEMENT OF FACTS**

2       On June 7, 2025, during a protest near the Homeland Security

3  Investigations facility in Paramount, California, defendant threw

4  multiple pieces of broken cinderblock at uniformed Border Patrol

5  Agents protecting federal property.  The assault was captured on

6  surveillance video, which shows defendant crouching behind a pickup

7  truck, picking up concrete debris, and hurling the fragments toward

8  agents positioned in a skirmish line.  The thrown debris struck one

9  agent on the leg, and he suffered a bloodied shin.  The agents'

10 reports and the video confirm that defendant was the aggressor and

11 that no agent used force toward him before or during the attack.

12      The publicly available YouTube video depicts only the aftermath:

13 officers pursuing, taking down, and arresting defendant after the

14 assault.  The takedown occurs after defendant's final throw, at a

15 separate location, and is not part of the charged conduct.

16 **III. ARGUMENT**

17      **A.   Evidence of the Takedown and Arrest Is Irrelevant**

18      Under Rule 401, evidence is relevant only if it has "any

19 tendency to make a fact more or less probable" and the fact "is of

20 consequence in determining the action."  Here, the charged assault

21 was complete once defendant launched the cinderblocks that struck the

22 agents.  Whether or how officers later detained him has no bearing on

23 any element of the offense -- (1) forcible assault, (2) upon a

24 federal officer, (3) engaged in official duties -- or on any

25 potential defense.  See Model Crim. Jury Instr. 9th Cir. 8.2 (2022).

26      The Ninth Circuit confines self-defense under § 111 to "a narrow

27 range of circumstances" involving excessive force during the

28 confrontation itself, not afterward.  United States v. Acosta-Sierra,

2

690 F.3d 1111, 1126 (9th Cir. 2012).  Here, the arrest occurred only after defendant's assault was over.  No officer used "immediate unlawful force" prompting defensive action.  Thus, any post-assault arrest evidence is irrelevant to both guilt and any permissible affirmative defense.

**B.    Even if Minimally Relevant, the Evidence Should Be Excluded Under Rule 403**

Even assuming some minimal relevance, the probative value of post-assault footage or testimony is substantially outweighed by the danger of unfair prejudice, jury confusion, and undue delay.  See Fed. R. Evid. 403.  Such evidence would invite the jury to shift its focus from defendant's conduct to the officers' actions following such conduct, transforming the trial into a referendum on the propriety of the arrest rather than the charged assault.

As the Ninth Circuit has explained, evidence is unfairly prejudicial when it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action."  United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995).  Introducing evidence of the arrest would do precisely that, provoking emotional reactions while providing no insight into whether defendant committed the charged assault.

Moreover, introduction of such evidence risks confusing the issues and creating a collateral "mini-trial" as to whether the arrest was proper.  As the jurors will likely be instructed, they are "to weigh and to evaluate all the evidence received in the case" and not "be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases."  Model Crim. Jury Instr. 9th Cir. 1.1 (2024).  The introduction of the evidence at issue risks

3

unfair prejudice against the government and invites the jury to make their own independent determination about the reasonableness of the arrest -- which occurred after the charged conduct -- that will likely be based on their perception of law enforcement rather than legal precedent[1].

Given the limited probative value of evidence of the arrest, the only purpose of introducing such evidence would be to confuse the jury about the elements of the offense, inflame the passions of the jury, or otherwise invite jury nullification by suggesting that the officers acted overzealously or inappropriately. Defendant is not entitled to introduce this otherwise irrelevant evidence in the hopes of encouraging jury nullification. This Court should prevent such a sideshow by excluding evidence of the takedown arrest, which occurred only after defendant's criminal conduct was complete.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant its motion in limine and exclude any evidence, testimony, or argument relating to defendant's arrest or events occurring after the charged assault, including but not limited to the takedown, restraint, or defendant's appearance afterward, whether through video, photograph, or witness testimony.

---

[1] Courts have repeatedly recognized the "delicate situation faced by law enforcement officers, who are required to make snap judgments regarding the very real threats that unrest presents to officers and the public alike." Acosta-Sierra, 690 F.3d at 1127.

4

1
                                   **<u>DEFENDANT'S POSITION</u>**

2
**I.    INTRODUCTION**

3
      The government moves to preclude all evidence or argument

4
relating to Mr. Terrazas's arrest "including footage, stills,

5
testimony, or commentary concerning the takedown, restraint

6
techniques, or his physical appearance afterward." In the

7
government's view, all such evidence is irrelevant and unduly

8
prejudicial. Not so. Evidence of Mr. Terrazas's arrest is directly

9
relevant to his defense and the credibility of potential witnesses

10
and must be admitted.

11
**II.   ARGUMENT**

12
      **A.    Evidence of the Arrest is Relevant.**

13
      The Sixth Amendment guarantees criminal defendants "a meaningful

14
opportunity to present a complete defense." <u>Crane v. Kentucky</u>, 476

15
U.S. 683, 690 (1986) (quoting <u>California v. Trombetta</u>, 467 U.S. 479,

16
485 (1984)). This fundamental right includes the "right to present

17
relevant evidence." <u>United States v. Scheffer</u>, 523 U.S. 303, 308

18
(1998). Accordingly, under the Federal Rules of Evidence, "[a]ll

19
relevant evidence is admissible" unless otherwise precluded by the

20
Constitution, statute, Supreme Court rulings, or the Rules

21
themselves. Fed. R. Evid. 402. Evidence is relevant if it has "any

22
tendency" to make a fact of consequence in determining the action

23
more or less probable than it would be without the evidence. Fed. R.

24
Evid. 401.

25
      The government claims that Mr. Terrazas and others threw broken

26
cinderblock during an immigration protest and one of the pieces of

27
cinderblock hit and injured Border Patrol Agent Lorenzo Cordero. Dkt.

28
No. 48. In the government's own telling above, law enforcement

arrested Mr. Terrazas "after" the alleged assault occurred and "at a separate location" than he had been during the alleged assault. The publicly available video cited by the government shows two law enforcement agents in tactical gear approach an unarmed Mr. Terrazas before one of them violently throws him onto the pavement and pins him to the ground. Several other civilians and protesters can be seen walking around, yelling, and taking pictures at the time. Agent Cordero did not participate in the arrest.

First, evidence surrounding the arrest--which was conducted long after the alleged assault in a different location by law enforcement agents who did not even witness the assault--is directly relevant to a central issue in this case: whether Mr. Terrazas was correctly identified as the individual Agent Cordero and others claim to have seen throwing cinderblock earlier in the day. See United States v. Waters, 627 F.3d 345, 353 (9th Cir. 2010) ("'[A]ttacking the reliability of [an] investigation' is an important defense tactic" (quoting Kyles v. Whitley, 514 U.S. 419, 446 (1995)). Despite its assertions to the contrary in this motion, the government itself recognizes the clear relevance of this evidence. In its motion in limine to preclude self-defense, the government specifically cites to evidence of the arrest and the clothing Mr. Terrazas is wearing in the video to support its argument that "the clothing of the individual shown throwing cinderblock chunks matched that of the defendant at the time of his later arrest." Gov't MIL to Preclude Self-Defense at 4. Mr. Terrazas has a constitutional right to challenge the government's claim that he is the "same person" that "struck [agents] with the cinderblocks." Id. To do so, he must be able to present evidence related to his arrest and question when he

was identified, how he was identified, and who he was identified by.
See United States v. Sager, 227 F.3d 1138, 1145 (9th Cir. 2000)
("Details of the investigatory process potentially affect[] [an
investigating agent's] credibility and, perhaps more importantly, the
weight to be given to evidence produced by his investigation.").

Second, evidence relating to the arrest could separately become
relevant if Mr. Terrazas testifies at trial. Mr. Terrazas has a
constitutional right to testify in his own defense. Should he choose
to exercise that right, he must be able to explain how his memory and
recall of the events in question have been impacted by the injuries
he sustained from the violent arrest. As has been documented, Mr.
Terrazas showed signs of a traumatic brain injury or concussion at
his initial appearance. Dkt. No. 16 at 5. He had a contusion and
bloody scab on his face and shoulders, repeatedly requested medical
attention, and was experiencing head pain, photo-sensitivity, blurred
vision, and trouble reading. Id. Counsel noticed that one of his eyes
appeared to be drifting to the side involuntarily. Id. Mr. Terrazas's
injuries were so apparent that the Magistrate Judge ordered "that the
defendant be immediately provided with a medical examination and/or
treatment." Dkt. No. 4. This type of head injury could readily impact
Mr. Terrazas's ability to recall in detail the events at issue in
this case, which occurred earlier that same day. If that is the case,
Mr. Terrazas must be allowed to explain why his memory is less sharp
than it otherwise would be.

Finally, evidence relating to the arrest could also become
relevant to bias and credibility if one of the agents involved in Mr.
Terrazas's arrest is called to testify. The fact that the arresting
agents engaged in violent and excessive force against Mr. Terrazas

7

gives them an incentive to lie. Those agents would be more likely to try to excuse their behavior by making Mr. Terrazas seem dangerous and their own actions justified. See Burr v. Sullivan, 618 F.2d 583, 586 (9th Cir. 1980) ("The right to confront witnesses guaranteed by the [S]ixth and [F]ourteenth [A]mendments includes the right to cross-examine witnesses to show their possible bias or self-interest in testifying."); Davis v. Alaska, 415 U.S. 308, 316 (1974) ("The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.").

Evidence relating to the arrest of Mr. Terrazas is relevant to his defense and is likely to become relevant for additional purposes depending on who is called to testify at trial. Under such circumstances, it would be premature for this Court to preclude all evidence relating to the arrest. See McConnell v. Wal-Mart Stores, Inc., 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014) ("To exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds" (internal quotation omitted)).

**B.    The Arrest is Not Unfairly Prejudicial, Nor is it Confusing, Misleading, or a Waste of Time.**

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 has long been "characterized . . . as an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." United States v. Patterson, 819 F.2d 1495, 1505 (9th Cir. 1987) (internal quotation

8

marks omitted). The Rule "does not permit the court to exclude [a party]'s evidence simply because it may hurt the [other]." Old Chief v. United States, 519 U.S. 172, 193 (1997) (O'Connor, J., dissenting).

The need to conduct a Rule 403 balancing test with respect to the challenged evidence demonstrates why the government's motion is woefully premature. The government has not identified specific pieces of objectionable evidence, meaning that it would be impossible for the Court to evaluate the evidence's probative value and prejudicial effect, especially in the context of each piece of evidence's intended use at trial. The Court can deny the motion without prejudice on that basis alone. See, e.g., StarStone Nat'l Ins. v. Indep. Cities Risk Mgmt. Auth., No. 19-cv-1130-PA, 2020 WL 6143608, at *3 (C.D. Cal. Aug. 19, 2020) (denying without prejudice motion in limine that sought a "blanket ruling" and failed to "specifically identif[y]" the objectionable evidence); Mims v. Fed. Express Corp., No. 13-cv-3947-AB, 2015 WL 12711651, at *6 (C.D. Cal. Jan. 15, 2015) ("Unfortunately, blanket requests in limine such as this are all too common in modern litigation. However, their prevalence does not enhance their propriety.").

At this stage, the government cannot establish that all post-arrest evidence is categorically too prejudicial to be admitted under Rule 403. It is understandable why the government does not want the jury to see evidence of law enforcement using excessive force to arrest Mr. Terrazas, it hurts their case; but that does not make this relevant evidence "unfairly prejudicial."

To the extent the Court is concerned about unfair prejudice, there are alternative approaches it should take instead of exclusion. First, the Court can instruct the jury to set aside emotion and bias when deliberating. Rather than exclude the evidence, the Court can invite the government to propose additional limiting instructions to address its (unfounded) concerns. The fact that the government does not even mention limiting instructions is telling, and the availability of that mechanism undercuts the notion that a blanket pretrial ruling on inadmissibility is necessary or proper. Second, the Court can allow the government to elicit context for the video footage from its witnesses. If the witnesses did nothing wrong, they should have no trepidation about explaining their actions.

The other Rule 403 reasons for exclusion cited by the government are nonsense. The short video is not going to unduly waste any time, confuse the issues, or mislead the jury. To the extent the government is genuinely concerned about confusing or misleading the jury, it can submit limiting instructions for the Court to review and deliver at the time the evidence is received.

**III. CONCLUSION**

For the foregoing reasons, the defense respectfully requests that the Court deny the government's motion.

1

**GOVERNMENT'S REPLY**

2      Defendant's opposition rests on several flawed premises: that

3 post-assault arrest footage bears on identity; that an arrest

4 occurring at a different time and location can somehow support a

5 self-defense theory; and that the government's limited reference to

6 defendant's clothing renders the entire arrest sequence relevant.

7 None withstands scrutiny.

8      The arrest occurred only after defendant's assaultive conduct

9 had concluded and at a separate location.  It has no bearing on any

10 element of the charged offense or on any legally cognizable defense.

11 The Ninth Circuit has repeatedly emphasized that self-defense under §

12 111 is confined to circumstances in which a defendant responds to the

13 immediate use of unlawful force during the confrontation itself, not

14 to force used hours later when officers move to effect an arrest.

15 Defendant's attempt to reframe a public bystander video of his arrest

16 as relevant to his earlier assault, or to manufacture relevance where

17 none exists, should be rejected.

18      Defendant's primary contention -- that arrest video is "directly

19 relevant" to identity -- misstates both the factual record and the

20 law.  Identity will be established through the Home Depot

21 surveillance footage, the clothing and conduct shown in that footage,

22 and the testimony of the agents explaining in that defendant is the

23 person they observed throwing rocks and the same person they

24 arrested.  Nothing about the video of a later takedown captured in a

25 different area and at a later time makes it more or less probable

26 that defendant was the individual throwing cinderblock pieces earlier

27 that afternoon.

28

1    Defendant also claims that the government "relies on arrest

2 footage" to link him to the Home Depot video.  That is incorrect.

3 The government relies on the fact that defendant was wearing the same

4 distinctive clothing at the time of his arrest as the individual

5 depicted in the Home Depot footage, not on the takedown video itself

6 or on any post-assault conduct.  Whether officers later moved quickly

7 to restrain defendant has no bearing on whether he was the aggressor

8 earlier in the day.  Video of the takedown and arrest in no way

9 meaningfully undermines the investigation into defendant's

10 misconduct; indeed, the cases defendant cites permit cross-

11 examination of investigative steps, not the admission of remote,

12 collateral footage wholly unrelated to the charged conduct.

13    For example, United States v. Waters, 627 F.3d 345 (9th Cir.

14 2010) -- a case defendant cites -- confirms that the Court may, and

15 should, exclude speculative, marginally relevant evidence that would

16 invite jury confusion and devolve into a distracting mini-trial.  In

17 Waters, the Ninth Circuit affirmed the exclusion of defense evidence

18 offered to "attack the reliability of [the] investigation,"

19 recognizing that while such attacks can be legitimate in principle,

20 they remain subject to Rule 403.  Id. at 353.  The court emphasized

21 that the probative value of the defense theory was "quite low,"

22 resting on speculation and a minor discrepancy, while the risk of

23 prejudice and confusion was substantial.  Id.  Allowing the defense

24 to pursue that theory would have required a collateral inquiry into

25 investigative steps, discovery responses, and prosecutorial conduct -

26 - precisely the kind of sideshow Rule 403 is designed to prevent.

27 Id. at 353-54.

28

That reasoning applies with even greater force here.  Defendant seeks to introduce a bystander video of his arrest -- occurring hours after the charged assault, at a different location, and involving officers who are not victims -- purportedly to suggest identity problems, justify self-defense, or impeach credibility.  Like the conspiracy theory in Waters, these arguments are speculative and attenuated.  The arrest footage does not make it more or less probable that defendant threw cinderblocks at agents earlier that afternoon, nor does it bear on the elements of § 111 or any cognizable defense.  Yet admitting it would inevitably trigger a collateral mini-trial about the propriety of the arrest, officers' use of force, and post-assault crowd control—issues wholly divorced from the charged conduct.

Critically, Waters also forecloses defendant's attempt to "constitutionalize" the evidentiary dispute.  The Ninth Circuit squarely rejected the argument that exclusion of marginal evidence violates the Sixth Amendment, explaining that while defendants have a right to present a defense, that right "is not without limits."  Id. at 354 (quoting Holmes v. South Carolina, 547 U.S. 319, 326-27 (2006)).  Trial courts retain broad discretion to exclude evidence that is "only marginally relevant" or that poses an undue risk of prejudice, confusion, or misleading the jury.  Id.  Defendant "cannot transform the exclusion of this evidence into constitutional error" merely by labeling it part of his defense.  Id. (quoting United States v. Perkins, 937 F.2d 1397, 1401 (9th Cir. 1991)).

Just as in Waters, defendant here is not precluded from presenting the substance of his defense.  He may challenge identity through cross-examination of the agents, argue inconsistencies in

testimony, and contest the government's proof regarding his conduct during the assault itself.  What he may not do is introduce remote, inflammatory video footage of a later arrest (or question officers on the manner in which they arrested defendant (i.e., tackling him) to invite speculation, confuse the issues, or shift the jury's focus from his assaultive conduct to officers' subsequent actions.  <u>Waters</u> confirms that excluding such evidence strikes the proper balance between a defendant's right to present a defense and the Court's obligation to ensure a fair and focused trial.

Defendant's effort to tether post-arrest force to a self-defense theory fails for similar reasons.  The Ninth Circuit is unequivocal: a self-defense theory in a § 111 prosecution applies only to the confrontation giving rise to the charge.  Ninth Cir. Model Criminal Jury Instruction 8.3 (requiring immediacy); <u>Acosta-Sierra</u>, 690 F.3d at 1126 (same).  A subsequent arrest cannot retroactively justify an earlier assault.  For example, the law does not permit a defendant to assault officers, disengage or flee, and then rely on subsequent arrest force to revive a self-defense claim.  Defendant's own concession that Agent Cordero did not participate in the arrest further severs any conceivable connection between the takedown and the charged offense.  <u>See</u> Def.'s Opp. at p. 6 ("Agent Cordero did not participate in the arrest.").

Nor does defendant's assertion that arrest footage is necessary to explain alleged memory issues or injuries render such evidence admissible.  If defendant elects to testify, he may state -- in words -- that he at some point struck his head and believes this affected his memory or recall.  But the manner, circumstances, and purported severity of how he claims to have been injured during the post-

assault arrest are not probative of any fact of consequence in this case. Those details do not bear on whether defendant assaulted federal officers earlier in the day, nor do they make any element of the charged offense more or less probable. Rather, they would be offered solely to evoke juror sympathy and to shift the jury's focus from defendant's conduct to collateral allegations about law enforcement's actions after the assault had concluded.

Allowing defendant to litigate the details of his claimed injuries would also result in precisely the sort of collateral mini-trial Rule 403 is designed to prevent. Defense counsel's opposition takes great liberties in characterizing defendant's condition as a "traumatic brain injury" or "concussion," yet cites no objective medical evidence supporting those conclusions. The limited medical records in the record tell a different story. Jail medical records from Santa Ana Jail reflect that at booking on June 7, 2025, defendant had only "superficial abrasions" and expressly denied pain or discomfort. Five days later -- after meeting with counsel -- defendant for the first time complained that he had been struck in the head with a baton, despite having denied any pain at booking. The treating nurse documented the inconsistency, noting: "Discussed with patient why he did not inform medical of being hit with a baton in the head when he was booked in last Saturday. At that time patient had very superficial abrasions and he denied pain/discomfort/LOC. He states he did not know he was hit until his lawyer showed him a video of the incident." The same records note no visual or palpated swelling, and there is no evidence that defendant was struck with a baton at all.

15

1    These discrepancies underscore the speculative and collateral

2 nature of defendant's claimed medical issues and confirm why further

3 exploration of this topic would distract the jury and invite

4 confusion.  Whatever defendant may subjectively claim about his

5 memory, the law does not require -- and Rule 403 does not permit --

6 the introduction of inflammatory arrest footage or extended testimony

7 about unsubstantiated medical theories to explain it.  Any reference

8 to injuries allegedly sustained during the arrest beyond a brief

9 statement that defendant claims he struck his head should therefore

10 be excluded.

11    Defendant also suggests that the arrest video is relevant to

12 impeachment or bias.  That argument fares no better.  The arresting

13 agents are not victim witnesses and may not testify at all.  Even if

14 they did, the video concerns force used after the crime, not

15 investigative steps bearing on credibility.  Introducing this footage

16 would invite a confusing and prejudicial mini-trial about the

17 propriety of the arrest, rather than the assault itself, which is

18 precisely the distraction Rule 403 is designed to prevent.

19    Defendant's broad invocation of the right to present a defense

20 does not alter the analysis.  While defendants are entitled to

21 present relevant evidence, that right does not override the relevance

22 requirements of Rule 401 or the balancing mandated by Rule 403.  Nor

23 does it entitle a defendant to introduce inflammatory footage simply

24 because it casts law enforcement in a negative light or encourages

25 jurors to judge officers' later conduct rather than defendant's own

26 actions.

27    Finally, defendant's assertion that the motion is "premature"

28 misunderstands motions-in-limine practice.  The government has

clearly identified the evidence at issue: footage of the takedown and arrest, argument or questioning about the manner of the takedown and arrest, and any imagery relating to that arrest. Defendant identifies no legitimate scenario in which such evidence would be admissible for a proper purpose.  A motion in limine is precisely the appropriate vehicle to prevent prejudicial and irrelevant material from ever being shown to the jury.

Even if the arrest footage carried some minimal probative value (it does not) that value would be substantially outweighed by the danger of unfair prejudice, confusion, and distraction.  The video depicts multiple officers restraining defendant in a chaotic environment with shouting civilians.  No limiting instruction could cure the visceral emotional response such footage is likely to provoke.

* * * *

Defendant's opposition confirms that he seeks to use post-assault information – including the arrest video footage and stills, testimony, or commentary concerning purported arrest injuries – for improper purposes: to inflame, to confuse, and to encourage jury nullification.  The takedown and arrest occurred after the assault, at a different location, and involved officers who are not victims in this case.  The footage is irrelevant to identity, self-defense, memory impairment, or credibility, and would create an unnecessary and prejudicial sideshow.  Defendant is free to conduct limited cross-examination regarding the circumstances of his arrest, including how officers identified him, whether the person arrested matched the description of the individual observed throwing cinderblock pieces, and whether he was wearing clothing consistent

with that observed during the assault.  He may not, however, introduce an inflammatory arrest video and photographs of arrest injuries (or elicit testimony or argument regarding them) where such information has minimal probative value is substantially outweighed by the danger of unfair prejudice and jury confusion.

The Court should grant the government's motion and exclude all evidence, testimony, or argument relating to defendant's arrest – including the arrest video footage and stills, testimony, or commentary concerning purported arrest appearance and injuries.

1

2

**DECLARATION OF ERIC L. MACKIE IN SUPPORT OF GOVERNMENT'S MOTION IN LIMINE NO. 2 TO PRECLUDE IRRELEVANT AND PREJUDICIAL POST-ASSAULT EVIDENCE**

3

4

I, Eric L. Mackie, hereby declare as follows:

5

1.    I am an Assistant United States Attorney for the Central

6

District of California and the attorney assigned to represent the

7

United States in <u>United States v. Jacob Daniel Terrazas</u>, Case No.

8

2:25-cr-00500-PA.  I make this declaration in support of the

9

government's Motion in Limine No. 2 to preclude defendant JACOB

10

DANIEL TERRAZAS from presenting irrelevant and prejudicial post-

11

assault evidence at trial.  I have personal knowledge of the facts

12

set forth herein, and if called as a witness, I could and would

13

testify competently thereto.

14

2.    The government seeks to exclude any testimony, evidence, or

15

argument concerning defendant's post-assault arrest, including any

16

video, still images, commentary, or witness testimony describing the

17

physical takedown of defendant after he completed the charged

18

assaultive conduct.

19

3.    I have discussed the subject of this motion with defense

20

counsel, Gabriela Rivera and Ryan Shelley, regarding this issue.  I

21

advised them that the government considered the takedown arrest

22

irrelevant to the elements of 18 U.S.C. § 111 and would move to

23

exclude it.  Defense counsel has declined to stipulate that

24

references to the arrest will not be made in the jury's presence

25

absent a ruling from the Court.  Accordingly, this motion is

26

necessary to avoid the introduction of inadmissible and prejudicial

27

matter at trial.

28

4.    Admission of this evidence would cause substantial prejudice because (a) the arrest occurred after the assault ended and therefore has no relevance to defendant's guilt; (b) showing footage of the takedown risks inflaming the jury, evoking emotion, or shifting focus onto the propriety of the arrest rather than defendant's assaultive conduct; and (c) injection of these issues invites a collateral "mini-trial" on use-of-force tactics, confusing and misleading the jury under Rules 401 and 403.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed at Los Angeles, California on December 15, 2025.

/s/ Eric L. Mackie
ERIC L. MACKIE
Assistant United States Attorney